IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Deborah K. Ray,                    :

        Plaintiff,              :

     v.                           :     Case No. 2:06-cv-0460

Group Long Term Disability     :     JUDGE HOLSCHUH
Policy, et al.,
                            :
        Defendants.

<u>OPINION AND ORDER</u>

    This ERISA case is before the court to resolve a discovery
issue.  Plaintiff Deborah K. Ray asserts that she is entitled to
conduct discovery on the relationship between Defendant Hartford
Life and Accident Insurance Company and Dr. Barry Turner, one of
the physicians who conducted a review of her medical history and
expressed the opinion that she does not qualify for disability
benefits under the Hartford plan.  The parties have filed
competing motions to compel discovery for a protective order.
For the following reasons, Ms. Ray's motion to compel will be
denied, and the Hartford's motion for a protective order will be
granted.

I.

    The facts relating to the discovery issue raised by the
parties' motions are not substantially in dispute.  Ms. Ray was
initially granted disability benefits based upon her inability to
perform her usual work, which was factory work.  However, the
policy under which she is entitled to such benefits (which was
assumed by Hartford at some point after the initial grant of
benefits) provided that, after two years of receiving disability
benefits, a claimant such as Ms. Ray would not be entitled to

continue to receive benefits unless she were also disabled from performing any other occupation for which she is qualified by virtue of her education, training, and experience.

In order to determine whether Ms. Ray should receive benefits beyond the initial two-year period, Hartford requested a review of her medical records. One of the doctors who performed that review, Dr. Turner, reported to Hartford that he did not believe Ms. Ray should continue to receive benefits because she was able to perform a sedentary occupation. Initially, he based his opinion in part upon a telephone conversation which he reportedly had with one of Ms. Ray's treating physicians, Dr. Bonasso. According to Dr. Turner, Dr. Bonasso also expressed the opinion that Ms. Ray could perform sedentary work.

Because Dr. Bonasso had previously stated in writing that Ms. Ray could not perform even sedentary work, he was contacted by Ms. Ray's counsel and asked if he had expressed a contrary view to Dr. Turner. When he denied that he had, Ms. Ray asked Hartford to reconsider its decision denying her benefits. Hartford not only refused to reconsider its decision, but it returned documents to her which were submitted in connection with that request, noting that its decision was final and the administrative record was closed. After Ms. Ray re-contacted Hartford, this time providing Hartford with a statement directly from Dr. Bonasso that he had not expressed to Dr. Turner the view that Ms. Ray could perform sedentary work, Hartford did re-open the record. It asked Dr. Turner to reconsider whether he accurately recalled his conversation with Dr. Bonasso. Dr. Turner then issued another report stating that although there may have been a miscommunication between himself and Dr. Bonasso, he remained of the view that Ms. Ray could perform sedentary work and was therefore not entitled to benefits.

The Hartford acknowledges that it is both the plan

administrator and the payor of benefits and, as such, has a conflict of interest which the Court must take into account in determining whether or not its denial of benefits was in accordance with the appropriate statutory standard.  However, Ms. Ray desired to conduct discovery which is designed to determine not simply whether the Hartford suffers from a conflict of interest, but whether Dr. Turner has a motivation to skew his opinion towards a denial of benefits based upon his relationship with Hartford.  To that end, Ms. Ray has propounded interrogatory and document requests which would, if answered, reveal how frequently Dr. Turner has been employed by Hartford to review benefits claims and, how much money Hartford has paid to Dr. Turner over the last five years, and how often Hartford denied or terminated benefits based upon information received from Dr. Turner.  It is with these facts in mind that the motions will be decided.

II.

Both parties acknowledge that, in the typical benefits case filed under ERISA, the Court's review of the plan administrator's decision is limited to the administrative record which was before the administrator at the time the decision was made. Consequently, in such cases, discovery is ordinarily not permitted, because any additional facts learned through discovery would not have a bearing on the Court's determination of whether the administrator's decision found adequate support in the administrative record.

Both parties also acknowledge, however, that discovery has been permitted in ERISA cases if it is directed towards issues which would not alter or expand the content of the administrative record, but which would shed light on some other legal issue which is germane to the Court's decision.  Thus, for example, discovery can be conducted on the issue of whether a plan

3

administrator is biased, because such bias is relevant to the
Court's determination of the appropriate standard of review and
because facts relating to alleged bias do not appear as part of
the administrative record.

Both parties suggest the Court turn for guidance to the
decision in Bennett v. UNUM Life Ins. Co. of America, 321 F.
Supp.2d 925 (E.D. Tenn. 2004). In Bennett, the court noted the
general rule of discovery is not appropriate in ERISA cases as
well as the exceptions provided where such discovery relates to
"an alleged lack of due process or bias on the part of the
administrator." Bennett, 321 F.Supp.2d at 929, citing Wilkins v.
Baptist Healthcare Systems, 150 F. 3d. 609, 618-19 (6th Cir.
1998). The Bennett court rejected the notion, however, that
discovery should be permitted in every case where the plan
administrator has a conflict of interest, because such a rule is
inconsistent with the policy favoring expeditious and inexpensive
review of the denial of ERISA benefits. Rather, in order for a
claimant to obtain discovery, the claimant must allege not just a
general conflict of interest, but must specifically identify a
particular area where a conflict of interest, bias, or denial of
due process has occurred before directing discovery to that
specific issue. The Bennett court further noted that "[w]here,
however, an ERISA plaintiff comes forward with a reasonable basis
to believe that [the plan administrator's] conflict of interest
has solidified into conscious, concrete policies, procedures, and
practices to promote the company's financial welfare at the
expense of a full and fair evaluation of the plaintiff's claim
for benefits, then the plaintiff should be allowed to conduct
limited discovery to determine whether such policies, procedures
and practices do actually exist and, if so, to what extent they
interfered with the fair review of the plaintiff's claim for
benefits." Bennett, 321 F.Supp.2d. at 932-33. The court

4

permitted discovery in that case because the plaintiff had come forward with evidence that the plan administrator had adopted a practice of taking its current profitability into account in determining whether or not to pay benefits.

Here, citing to, *inter alia* the Sixth Circuit Court of Appeals' decisions in <u>Kalish v. Liberty Mutual/Liberty Life Assur. Co.</u>, 419 F.3d. 501 (2005) and <u>Calvert v. Firstar Fin.</u>, 409 F.3d. 286 (2005), Ms. Ray argues that the Court of Appeals has implicitly recognized that discovery may be appropriate to determine whether particular doctors retained by plan administrators have a conflict of interest might predispose them to expressing an opinion that a claimant is not entitled to benefits.  In <u>Kalish</u>, the plaintiff attacked the credibility of the doctor retained by the plan who expressed the opinion that the plaintiff could work.  The Court noted that in any case where the plan administrator is also the payor of benefits, the administrator has an incentive to choose reviewing physicians who are more likely to express opinions favorable to the administrator, but noted that it could not easily evaluate that factor with respect to the physician in question because the plaintiff did not "present any statistical evidence to suggest that, when retained by [the administrator] Dr. Conrad [the physician in question] has consistently opined that claimants are not disabled." <u>Kalish</u> 419 F.3d at 508.  <u>Calvert</u> also involved a potential conflict of interest on the part of a plan administrator who was the payor of benefits, and the plaintiff also argued that administrator selected physicians to review the file who might have had an incentive to express an opinion that the claimant was not disabled.  Although the Court of Appeals noted that the administrator "had a clear incentive to contract with individuals who were inclined to find in its favor," <u>Calvert</u> 409 F.3d. at 392, the Court did not specifically indicate that

discovery on that particular point was necessarily appropriate.
The Court did indicate, see <u>Calvert</u>, 409 F.3d at 293 n.2, that it
"would have a better feel" for the weight to be given to
conflict of interest if the issue had been explored through
discovery, but it did not indicate the precise subjects upon
which that discovery might have been initiated.

This Court agrees with the <u>Bennett</u> court that a blanket rule
permitting discovery in all cases where the plan administrator is
both the administrator and the payor would subvert the holding of
<u>Wilkins</u> and the goal of the expeditious and inexpensive court
review of benefit decisions. The same principle must necessarily
operate to prevent discovery in the typical case where a plan
administrator contracts with an independent physician or
consultant to conduct a file review. The mere fact that a
company has chosen to use an outside consultant (which is the
case in many situations, and particularly where the claimant
suffers from a condition which falls outside the expertise of any
physicians employed by the administrator) should not open the
door to broad discovery concerning the relationship between the
outside consultant and the plan administrator. In such cases,
the threshold showing which <u>Bennett</u> appears to require should be
directed towards the specific issue of bias on the part of the
consultant and should be supported by evidence which is obtained,
at least initially, other than through the discovery process.
For example, the plaintiff might present evidence that the same
consultant has expressed an opinion adverse to a claimant in a
large number of cases within a short period of time, as evidenced
by, for example, court decisions involving those benefit denials.
No such evidence has been presented here.

Ms. Ray argues that the unusual nature of Hartford's
response to her attempts to reopen the record, and the "shallow"
re-review of the record performed by Dr. Turner after he

acknowledged a potential miscommunication with Dr. Bonasso, are sufficient evidence of bias to justify further discovery into the relationship between Hartford and Dr. Turner. The Court disagrees. There is nothing unusual about a plan administrator's refusal to consider additional evidence after a final decision has been made and the administrative record has been closed, particularly when the request for additional consideration is not initially supported by anything other than conclusory statements that a mistake has been made. Here, after Hartford was presented with additional evidence suggesting that there may have been a miscommunication between Drs. Turner and Bonasso, it did request Dr. Turner to revisit the factors underlying his opinion. Thus, this "irregularity" does not rise to the level of the threshold showing needed for discovery.

The same is true with respect to Dr. Turner's reaffirmation of his opinion. Again, it is not an unusual occurrence that a consulting physician will reaffirm the same opinion even if one of multiple bases for the opinion is no longer deemed valid. Here, in addition to his discussions with Dr. Bonasso, Dr. Turner cited to specific portions of the medical record as support for his conclusion that the plaintiff could perform sedentary work. Thus, the Court cannot read into his reaffirmation of his opinion any type of bias that might stem from a source such as his financial relationship with Hartford rather than from his view that his opinion was rightly formed and stood on its own even without support from Ms. Ray's own physician.

Finally, the Court notes that Ms. Ray has made a strong argument in her discovery motion that a conflict of interest existed and that the Court should be wary of Dr. Turner's opinion and Hartford's reliance on it. The same arguments can be made to the Court with respect to the merits of her claim, and discovery is not needed to elucidate those arguments. Consequently, the

7

Court does not believe that Ms. Ray would be prejudiced if she is not permitted to conduct the discovery she has requested.

III.

Although the Court is mindful that the discovery which Ms. Ray has requested in this case might meet the general standard of relevance under Fed. R. Civ. P. 26(b)(1), it does not meet the higher standard required in an ERISA benefits case. Ms. Ray simply has not made the type of specific showing necessary to obtain discovery, and the discovery she wishes to obtain is the type of broad and general discovery which might be requested in every case where a plan administrator/payor retains an outside consultant to review records. Because, as a matter of policy, and in adherence to the Sixth Circuit Court of Appeals' Wilkins decision, the Court believes that such discovery is not permissible, her motion to compel discovery (doc. #12) is denied, and Hartford's motion for a protective order (doc. #10) is granted.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge

or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge